Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued January 17, 2003                Decided May 9, 2003

No. 01-1465
& No. 01-1476

PEOPLE'S MOJAHEDIN ORGANIZATION OF IRAN,
PETITIONER

v.

DEPARTMENT OF STATE AND
COLIN L. POWELL, SECRETARY OF STATE,
RESPONDENTS

Petitions for Review of Orders of the
Department of State

*Jacob A. Stein* argued the cause for petitioner. With him on the briefs were *George A. Fisher* and *Ronald G. Precup*.

*Douglas Letter*, Litigation Counsel, U.S. Department of Justice, argued the cause and filed the brief for respondent.

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before: EDWARDS and SENTELLE, *Circuit Judges,* and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* SENTELLE.

Separate concurring opinion filed by *Circuit Judge* EDWARDS.

SENTELLE, *Circuit Judge*: The People's Mojahedin Organization of Iran ("PMOI" or "Petitioner") seeks review of 1999 and 2001 decisions of the Secretary of State (collectively with the Department of State "the Secretary" or "Respondent") designating Petitioner as a foreign terrorist organization. After review of Petitioner's various claims that the designation violates constitutional and statutory rights of Petitioner, we conclude that the Secretary acted according to law and in full compliance with the requirements of the Constitution. We therefore deny the petitions for the reasons set forth more fully below.

## I. Background

We note at the outset that this is PMOI's third petition to this court to review designations of the PMOI as a foreign terrorist organization. *See People's Mojahedin Org. of Iran v. Dep't. of State*, 182 F.3d 17 (D.C. Cir. 1999) ("*PMOI*"); *Nat'l Council of Resistance of Iran v. Dep't. of State,* 251 F.3d 192 (D.C. Cir. 2001) ("*NCOR*"). Our opinions disposing of the prior petitions fully set forth the necessary background. Nonetheless, in order to lend a full understanding to the present proceedings, we will briefly review the statute, as well as the prior petitions and our disposition of them, before proceeding to the issues immediately before us in this case. The Anti–Terrorism and Effective Death Penalty Act of 1996 ("Anti–Terrorism Act" or "AEDPA"), 8 U.S.C. § 1189 (2000), empowers the Secretary of State to designate an entity as a "foreign terrorist organization." *See generally*, *PMOI*, 182 F.3d 17; *NCOR*, 251 F.3d 192. This designation causes the blocking of any funds which the organization has on deposit with any financial institution in the United States, 18 U.S.C.

§ 2339B(a)(2) (2000); exclusion from the United States of representatives of the organization, 8 U.S.C. § 1182(a)(3)(B)(i)(IV) & (V) (2000); and pertinent to our jurisdiction to review the designations before us, the Act imposes criminal penalties on any persons "knowingly provid[ing] material support or resources" to such organization, 18 U.S.C. § 2339B(a)(1). As we noted on one of the earlier visits, "[d]espite the seriousness of the consequences" of the designation, the process leading to it is "a truncated one." *NCOR*, 251 F.3d at 196. As we set out in more detail on the two earlier petitions, *see PMOI*, 182 F.3d at 21–22, and *NCOR*, 251 F.3d at 196–97, the Secretary compiles an administrative record and makes findings based on that record as to whether the organization meets the statutory criteria for designation as a foreign terrorist organization. Two features distinguish this procedure from other administrative proceedings governed by the Administrative Procedure Act ("APA"), 5 U.S.C. § 557(c) (2000). First, the AEDPA does not express any right of the aggrieved party to comment on the administrative record or to present evidence for inclusion in that record. *See PMOI*, 182 F.3d at 19; *NCOR*, 251 F.3d at 196. Secondly, and most pertinent to the present review, the statute expressly states that the Secretary is to consider the classified information in making a designation and that classified information is not subject to disclosure under the Act except to a reviewing court *ex parte* and *in camera*. 8 U.S.C. § 1189(a)(3)(B). A designation under the Act persists for two years, and the Secretary may re-designate a foreign organization as a foreign terrorist organization for succeeding two-year periods. *Id.* § 1189(a)(4)(B).

In order for the Secretary to designate a foreign organization as a foreign terrorist organization, he must make three findings based on the administrative record, that:

    A.   the organization is a foreign organization;

    B.   the organization engages in terrorist activity . . .; and

C. the terrorist activity or terrorism of the organization threatens the security of United States nationals or the national security of the United States.

*Id.* § 1189(a)(1)(A)-(C). *See PMOI*, 182 F.3d at 21.

An organization designated as a foreign terrorist organization must seek judicial review of the designation in this court under § 1189(b). That section empowers us only to "hold unlawful and set aside" designations that we find to be

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitation, or short of statutory right;

(D) lacking substantial support in the administrative record taken as a whole or in classified information submitted to the court under paragraph (2), or

(E) not in accord with the procedures required by law.

8 U.S.C. § 1189(b)(3).

The Secretary has made successive designations of Petitioner as a foreign terrorist organization in 1997, 1999, and 2001. Following the 1997 designation, Petitioner sought review in a proceeding that generated our opinion in *PMOI*. In that petition, the PMOI argued that the procedure for designation violated its due process rights to notice and hearing. We easily disposed of any constitutional claim, holding that "[a] foreign entity without property or *presence in* this country has no constitutional rights under the due process clause . . . ." *PMOI*, 182 F.3d at 22. We then proceeded to consider the rights of the organization under the statute. This consisted principally of determining the legal sufficiency of the Secretary's administrative record to support the three findings under § 1189(a)(1). As to the first, that the petitioner was a foreign organization, there was no dispute; it was. *Id.* at 24. As to the third, that "the terrorist activity of the organization threatens the security of United States nationals

or the national security of the United States" we held that to present a nonjusticiable question. *Id.* at 23. Such questions concerning the foreign policy decisions of the Executive Branch present political judgments, " 'decisions of a kind for which the Judiciary has neither aptitude, facilities nor responsibilities and have long been held to belong in the domain of political power not subject to judicial intrusion or inquiry.' " *Id.* at 23 (quoting *Chicago & Southern Air Lines, Inc. v. Waterman Steamship Corp.*, 333 U.S. 103, 111 (1948)).

That left us solely with the question of the sufficiency of the administrative record to support the Secretary's determination that "the organization engages in terrorist activity." We found that record sufficient. *Id.* at 24–25.

When the Secretary re-designated the PMOI as a foreign terrorist organization in October of 1999, the organization again petitioned this court for review. One item in the 1999 designation differed from the 1997 designation. In 1999 the Secretary's designation included a finding that the National Council of Resistance of Iran, which claimed to be an organization independent of the PMOI, was an alias for the other organization and that the National Council was therefore a foreign terrorist organization as well—indeed, the same foreign terrorist organization. The National Council also petitioned for review. We consolidated the two petitions. Petitioners again raised the due process question with regard to the failure of the statute to grant them notice of the content of the file and an opportunity to be heard. The Secretary's finding that the NCOR and the PMOI were one and the same made a material difference in the result of our review on the constitutional question. Whereas the record before the court in PMOI had established that the petitioning organization did not have property or presence in the United States and was therefore not entitled to assert due process rights under the Constitution, on the record before us in the second case the evidence supported the proposition that the National Council did have such presence or property and was therefore entitled to assert that claim. *See NCOR*, 251 F.3d at 201–02. We therefore considered the merits of the due process claim. We held that the statute, as applied by the Secretary, did not

provide "the fundamental requirement of due process," that is, "the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* at 208 (internal quotations omitted) (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).

Based on our holding that the designees had not received the process they were due, we remanded the question to the Secretary for reconsideration. *Id.* at 209. We directed that on remand the Secretary should provide the petitioners "the opportunity to file responses to the nonclassified evidence against them, to file evidence in support of their allegations that they are not terrorist organizations," and provide them "an opportunity to be meaningfully heard" on the issues before the Secretary. *Id.* After the remand, the Secretary provided the PMOI with an opportunity to respond to the unclassified evidence, considered all material submitted by the PMOI along with both the unclassified and classified material in file, and reentered the 1999 designation on September 24, 2001, followed by a new two-year designation on October 5, 2001, based on material in the 1997 and 1999 administrative records, together with a new record compiled in 2001. The PMOI once again petitioned this court for relief.

## II. Analysis

### A. *Due Process and Sufficiency of Evidence*

Petitioner raises several arguments. First, it contends that its redesignation as a terrorist organization under 8 U.S.C. § 1189 is unconstitutional under the Due Process Clause of the Fifth Amendment of the Constitution because the statute permitted the Secretary to rely upon secret evidence–the classified information that respondents refused to disclose and against which *PMOI* could therefore not effectively defend. We reject this contention. As noted above, that statute authorizes designation of a foreign terrorist organization when the Secretary finds three elements. As to the first, that is that the organization is a foreign organization, there is not and cannot be any dispute. The People's Mojahedin is so assuredly a foreign organization that until the Secretary's

designation of the NCOR as its alias, it could not even establish a presence in the United States. *See PMOI*, 182 F.3d at 22–23. Nothing has changed in that regard since our prior decisions on the subject.

As to the second element, the PMOI advances a colorable argument: that the Secretary was able under § 1189(a)(3)(B) to "consider classified information in making [this designation]" and that the classified information was not "subject to disclosure" except to the court *ex parte* and *in camera* for purposes of this judicial review. Petitioner contends that this violates the due process standard set forth in *Abourezk v. Reagan*, 785 F.2d 1043, 1061 (D.C. Cir. 1986), "that a court may not dispose of the merits of a case on the basis of *ex parte*, *in camera* submissions." While colorable, this argument will not carry the day.

First, we have already set forth in *NCOR* the due process standards that the Secretary must meet in making designations under the statute. We held that the Constitution requires the Secretary in designating foreign terrorist organizations to provide to the potential designees, "notice that the designation is impending." *NCOR*, 251 F.3d at 208. We further required that the Secretary must afford the potential designee an "opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* at 209 (citing *Mathews v. Eldridge*, 424 U.S. at 333). The record reflects that the Secretary complied with our instructions.

Granted, petitioners argue that their opportunity to be heard was not meaningful, given that the Secretary relied on secret information to which they were not afforded access. The response to this is twofold. We already decided in *NCOR* that due process required the disclosure of *only* the unclassified portions of the administrative record. 251 F.3d at 207–09. We made that determination informed by the historically recognized proposition that under the separation of powers created by the United States Constitution, the Executive Branch has control and responsibility over access to classified information and has " 'compelling interest' in withholding national security information from unauthorized

persons in the course of executive business." *Dep't. of the Navy v. Egan*, 484 U.S. 518, 527 (1988) (quoting *Snepp v. United States*, 444 U.S. 507, 509 n.3 (1980)). In the context of another statutory scheme involving classified information, we noted the courts are often ill-suited to determine the sensitivity of classified information. *United States v. Yunis*, 867 F.2d 617, 623 (D.C. Cir. 1989) ("Things that did not make sense to [a judge] would make all too much sense to a foreign counter intelligence specialist . . . ."). The Due Process Clause requires only that process which is due under the circumstances of the case. *See Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("due process is flexible and calls for such procedural protections as the particular situation demands."). We have already established in *NCOR* the process which is due under the circumstances of this sensitive matter of classified intelligence in the effort to combat foreign terrorism. The Secretary has complied with the standard we set forth therein, and nothing further is due.

However, even if we err in describing the process due, even had the Petitioner been entitled to have its counsel or itself view the classified information, the breach of that entitlement has caused it no harm. This brings us to Petitioner's statutory objection. Petitioner argues that there is not adequate record support for the Secretary's determination that it is a foreign terrorist organization under the statute. However, on this element, even the unclassified record taken alone is quite adequate to support the Secretary's determination. Indeed, as to this element—that is, that the organization engages in terrorist activities—the People's Mojahedin has effectively admitted not only the adequacy of the unclassified record, but the truth of the allegation. By statutory definition, "terrorist activity" is

> any activity which is unlawful under the laws of the place where it is committed (or which, if . . . committed in the United States, would be unlawful under the laws of the United States or any State) and which involves any of the following:

(I) The hijacking or sabotage of any conveyance (including an aircraft, vessel, or vehicle).

(II) The seizing or detaining, and threatening to kill, injure, or continue to detain, another individual in order to compel a third person (including a governmental organization) to do or abstain from doing any act as an explicit or implicit condition for the release of the individual seized or detained.

(III) A violent attack upon an internationally protected person (as defined in section 1116(b)(4) of Title 18) or upon the liberty of such a person.

(IV) An assassination.

(V) The use of any—

(a) biological agent, chemical agent, or nuclear weapon or device, or

(b) explosive or firearm (other than for mere personal monetary gain),

with intent to endanger, directly or indirectly, the safety of one or more individuals or to cause substantial damage to property.

(VI) A threat, attempt, or conspiracy to do any of the foregoing.

8 U.S.C. § 1182(a)(3)(B)(iii) (2000 & Supp. 2003).

By its own admission, the PMOI has

(1) attacked with mortars the Islamic Revolutionary Prosecutor's Office; (2) assassinated a former Iranian prosecutor and killed his security guards; (3) killed the Deputy Chief of the Iranian Joint Staff Command, who was the personal military adviser to Supreme Leader Khamenei; (4) attacked with mortars the Iranian Central Command Headquarters of the Islamic Revolutionary Guard Corps and the Defense Industries Organization in Tehran; (5) attacked and targeted with mortars the offices of the Iranian Supreme Leader Khamenei, and of the head of the State Exigencies Council; (6) attacked with mortars the central headquarters of the Revolution-

ary Guards;  (7) attacked with mortars two Revolutionary Guards Corps headquarters;  and (8) attacked the head-quarters of the Iranian State Security Forces in Tehran.[1]

Were there no classified information in the file, we could hardly find that the Secretary's determination that the Petitioner engaged in terrorist activities is "lacking substantial support in the administrative record taken as a whole," even without repairing to the "classified information submitted to the court."  8 U.S.C. §  1189(b)(3)(D).

To summarize, the Secretary did not deprive Petitioner of any process to which it was constitutionally entitled.  Even if the record supported a finding of violation of due process, such a violation would be harmless as the unaffected portion of the record is ample to support the determination made.

The remaining element under §  1189(a)(1) is that "the terrorist activity or terrorism of the organization threatens the security of United States nationals or the national security of the United States."  *Id.* §  1189(a)(1)(C).  The thrust of Petitioner's argument is that its allegedly terrorist acts were not acts of terrorism under the statute, because they do not meet the requirement of subsection (C).  Petitioner argues that the attempt to overthrow the despotic government of Iran, which itself remains on the State Department's list of state sponsors of terrorism, is not "terrorist activity," or if it is, that it does not threaten the security of the United States or its nationals.  We cannot review that claim.  In *PMOI* we expressly held that that finding "is nonjusticiable."  182 F.3d at 23.  As we stated in that decision, "it is beyond the judicial function for a court to review foreign policy decisions of the Executive Branch."  *Id.* (citing *Chicago & Southern Air Lines, Inc. v. Waterman Steamship Corp.*, 333 U.S. 103, 111 (1948)).  Even if we differed with the analysis of the prior panel of this court, which we do not, we are bound by its decision.  *LaShawn v. Barry*, 87 F.3d 1389, 1395 (D.C. Cir. 1996) (one panel of the court does not have the authority to overrule another).  In short, we find neither statutory nor

---

[1] We note that Petitioner does not contest the "unlawfulness" of these acts as required by 8 U.S.C. §  1182(a)(3)(B)(iii).

due process errors in the Secretary's designation of petitioner as a foreign terrorist organization.

B. *Petitioner's Other Claims*

Petitioner raises several other arguments to the effect that the designation violates its constitutional rights. Those warranting separate discussion fall under the general heading of First Amendment claims. Petitioner's argument that its First Amendment rights have been violated rests on the consequences of the designation. Petitioner argues that by forbidding all persons within or subject to the jurisdiction of the United States from "knowingly provid[ing] material support or resources," 18 U.S.C. § 2339B(a)(1), to it as a designated foreign terrorist organization, the statute violates its rights of free speech and association guaranteed by the First Amendment. We disagree.

As the Ninth Circuit held in *Humanitarian Law Project v. Reno*, 205 F.3d 1130, 1135 (9th Cir. 2000), the statute "is not aimed at interfering with the expressive component of [the organization's] conduct but at stopping aid to terrorist groups." It is conduct and not communication that the statute controls. We join the Ninth Circuit in observing that "there is no constitutional right to facilitate terrorism by giving terrorists the weapons and explosives with which to carry out their grisly missions.[2] Nor, of course, is there a right to provide resources with which terrorists can buy weapons and explosives." *Id.* at 1133.

Although we have reviewed Petitioner's other arguments, none warrants relief, nor separate discussion.

---

[2] Although not raised by either party, at the instruction of the court the parties addressed the possibility that the 1999 designation was moot. Both parties agree, as does the court, that a realistic possibility exists of prosecutions under 18 U.S.C. § 2339A–2339C for crimes related to the terrorist designation of the PMOI during the period of that designation so that this controversy escapes mootness under the 'collateral consequences' exception recognized in, *e.g.*, *Public Utilities Comm'n of California v. FERC*, 100 F.3d 1451, 1460 (9th Cir. 1996); *National Iranian Oil Co. v. Mapco Int'l., Inc.*, 983 F.2d 485, 490 (3d Cir. 1992).

### III.    Conclusion

For the reasons set forth above, we conclude that in the designation and redesignation of the People's Mojahedin of Iran as a foreign terrorist organization, the Secretary of State afforded all the process that the organization was due, and that this designation violated neither statutory nor constitutional rights of the Petitioner.  We therefore deny the petitions for review.

*So ordered.*

1

EDWARDS, *Circuit Judge,* concurring: I concur in the judgment denying the petitions for review. I find it unnecessary, however, to reach the constitutional due process challenge to the Secretary's use of classified evidence to designate petitioner.

The public, unclassified administrative record, including petitioner's own submissions to the Secretary, contains more than enough evidence to support the determination that petitioner engages in terrorist activity. The Government followed the procedures that we required in *National Council of Resistance of Iran v. Department of State*, 251 F.3d 192 (D.C. Cir. 2001). Petitioner offered a wealth of submissions to the Secretary, which the public record now includes. Not only is there enough evidence in the public record to support the Secretary's determination that petitioner engaged in the acts alleged, there appears to be no dispute over the facts supporting that determination. And, for the reasons stated in the majority opinion, I agree that petitioner's activities clearly fall within the statutory definition of "terrorist activity" under 8 U.S.C. § 1182(a)(3)(B)(iii) (2000 & Supp. 2003). Therefore, I find it unnecessary to reach petitioner's constitutional due process challenge to the Secretary's use of secret, classified material to bolster its determination.

In sum, because there is substantial, unrefuted evidence in the public, unclassified record for the designation of petitioner as a foreign terrorist organization, I agree that the petition for review should be denied.