# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued January 9, 2018        Decided August 10, 2018

No. 17-5075

ABDUL MOHAMED WAKED FARES, ET AL.,
APPELLANTS

v.

JOHN E. SMITH, IN HIS OFFICIAL CAPACITY AS ACTING
DIRECTOR, OFFICE OF FOREIGN ASSETS CONTROL OF THE
DEPARTMENT OF THE TREASURY AND OFFICE OF FOREIGN
ASSETS CONTROL OF THE UNITED STATES DEPARTMENT OF
THE TREASURY,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:16-cv-01730)

*James E. Gillenwater* argued the cause for appellants.
With him on the briefs was *Peter J. Kahn. David D. Aufhauser*
entered an appearance.

*Nicolas Riley*, Attorney, U.S. Department of Justice,
argued the cause for appellees. With him on the brief were
*Jessie K. Liu*, U.S. Attorney, *Douglas N. Letter*, Attorney, and
*Lauren Sun*, Counsel, U.S. Department of Justice. *Benjamin*

*M. Schultz* and *H. Thomas Byron*, Attorneys, U.S. Department of Justice, entered appearances.

Before: PILLARD and WILKINS, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* PILLARD.

PILLARD, *Circuit Judge*: The Office of Foreign Assets Control (OFAC) unilaterally named two Panamanian men and a business they control as Specially Designated Narcotics Traffickers. Under the Foreign Narcotics Kingpin Designation Act, that agency decision froze the designees' assets in the United States and forbade anyone here from transacting or dealing in the frozen property. *See* 21 U.S.C. § 1904(b), (c). When the designees asked the agency to turn over the evidence against them—the administrative record setting out the bases of the designation—so that they could challenge the determination, the agency returned a file almost entirely blacked out with redactions. What lay behind those redactions, the government represented, could not be disclosed without compromising ongoing criminal investigations or risking the lives of key sources.

These designees sued, claiming that, because the government had failed to produce or describe the underlying *evidence* as such, it gave them insufficient post-deprivation notice of the bases of their designation in violation of the Due Process Clause of the Fifth Amendment. Plaintiffs immediately sought summary judgment, arguing that they had an absolute right to the evidence against them: The government must choose, plaintiffs urged, between disclosing the evidence and delisting (un-designating) them. The agency insisted it faced no such choice. Rather than disclose evidence that the agency deemed to contain law enforcement sensitive

information, it presented plaintiffs two unclassified summaries describing the factual bases of the designation decision. The agency then filed its own summary judgment motion, arguing that the unclassified summaries satisfied due process because they described the facts supporting plaintiffs' designations and thus enabled plaintiffs to challenge them. The district court granted the government's motion.

On appeal, plaintiffs maintain that due process requires more. They insist that the government must choose between (a) dropping the designation and (b) disclosing the evidence against them by producing the unredacted underlying evidentiary record, or, at a minimum, identifying facts about informants or other evidentiary sources, regardless of the practical costs. *See* Appellants' Br. 22 ("[D]ue process prohibits OFAC from relying on undisclosed material to uphold the merits of a sanctions designation."); Oral Arg. Tr. 7:24-9:7 (plaintiffs' counsel requesting "a non-privileged description of sources or where those sources come[] from, dates, places," or at least confirmation that the government used "a confidential source").

The Foreign Narcotics Kingpin Designation Act's asset-freezing provision unquestionably raises many due process concerns. But plaintiffs have chosen to frame their challenge in a manner that, by artificially limiting it, presents no tenable claim. Plaintiffs do not factually challenge the accuracy of the summaries' descriptions of their involvement in money laundering. Nor do they ask the government to make the allegations against them more specific. They do not challenge the scope of the government's sweeping redactions to the administrative record. Nor do they press the agency with control over the sensitive evidence to support its assertion of privilege. Plaintiffs do not ask for *in camera* examination of the administrative record for any purpose. Nor do they request

cleared counsel who could review the redacted information on plaintiffs' behalf. Instead—without questioning the government's assertion that disclosing any more of the underlying evidence or the sources of that evidence would have calamitous consequences—plaintiffs ask the court to direct the agency to turn over the evidence itself, or to identify its sources, compromising the very sensitivity they leave unchallenged. Otherwise, plaintiffs suggest, OFAC must drop the designation entirely.

That unyielding argument runs counter to precedent. We therefore affirm the district court's grant of summary judgment for the government. Plaintiffs have not made out a viable claim under the relevant due process framework. We note that other avenues remain for plaintiffs should they elect to use them to challenge their designation in the future.

I.

The Foreign Narcotics Kingpin Designation Act (Kingpin Act), 21 U.S.C. §§ 1901-1908, authorizes the Secretary of the Treasury—and by delegation the Office of Foreign Assets Control and its Director, John Smith, (collectively, OFAC, agency, or government)—to deem foreign persons who "materially assist[] in . . . international narcotics trafficking activities" as "specially designated narcotics traffickers" (Traffickers). *Id.* § 1904(b)(2)-(4); 31 C.F.R. §§ 598.314, 598.803. Trafficker designations under the Kingpin Act are analogous to other Executive Branch asset-freezing designations, such as those authorized by the International Emergency Economic Powers Act (IEEPA), 50 U.S.C. § 1702, and the Anti-Terrorism and Effective Death Penalty Act (AEDPA), 8 U.S.C. § 1189. *See Zevallos v. Obama*, 793 F.3d 106, 110 (D.C. Cir. 2015). Under each scheme, the designated person ("a specially designated national, specially designated

terrorist, or specially designated narcotics trafficker") is added to the "Specially Designated Nationals and Blocked Persons List." 31 C.F.R. § 501.807(a); *see Zevallos*, 793 F.3d at 110. All persons on OFAC's combined list have their "property and interests in property within the United States" frozen, and no one may deal in those assets. 21 U.S.C. § 1904(b), (c); *see Zevallos*, 793 F.3d at 110.

Individuals designated as traffickers by OFAC may "seek administrative reconsideration" before the agency. 31 C.F.R. § 501.807. Practically, that entails challenging the sufficiency of the bases of the designation and/or rebutting those bases, such as by submitting exculpatory materials to the agency. *Id.* As part of the agency's reconsideration process, designated individuals may request disclosure of the administrative record supporting the designation decision. The statute provides that, to support its determinations, OFAC may submit classified information *ex parte* and *in camera* to any court considering a challenge to a designation. 21 U.S.C. § 1903(i).

This court, in the context of a "foreign terrorist organization" designation under AEDPA, has "already decided . . . that due process require[s] the disclosure of *only* the unclassified portions of the administrative record." *People's Mojahedin Org. of Iran v. Dep't of State*, 327 F.3d 1238, 1242 (D.C. Cir. 2003) (*People's Mojahedin II*) (citing *Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 207-09 (D.C. Cir. 2001) (*NCORI*)); *see Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 164 (D.C. Cir. 2003) (*Holy Land*). We have countenanced that approach in very limited, statutorily recognized circumstances when the government has *both* exigent reasons for freezing assets *and* pressing interests in the nondisclosure of the highly sensitive classified information. In that narrow category of cases, other procedural safeguards sufficed to provide meaningful protections of due

process interests in adequate notice and accurate decision making, and prevent government overreach.

## II.

On May 5, 2016, OFAC designated as traffickers several dozen Panamanian individuals and entities, including plaintiffs here: Abdul Mohamed Waked Fares, a Panamanian businessman who owned and operated several companies also designated; his son, Mohamed Abdo Waked Darwich, who held an executive position in those businesses; and Grupo Wisa, S.A., one of Fares's businesses, which sells duty-free goods internationally; together with approximately two dozen other businesses (not parties to this litigation) owned and operated by Fares or Darwich. Joint App'x (J.A.) 8-9, 111-12; *see* Additional Designations, Foreign Narcotics Kingpin Designation Act, 81 Fed. Reg. 28,937 (May 10, 2016).[1]

A few weeks after the designation, plaintiffs requested that OFAC reconsider its decision. J.A. 104-06. The reconsideration request did not present exculpatory evidence; instead, it focused on the "permanent adverse consequences of the designations," and proposed an alternative, interim means of immobilizing plaintiffs' control of their property: placing "all affected assets into trusts managed by independent persons approved by the U.S. government." J.A. 106; *see generally* 31 C.F.R. § 501.807(a) (identifying "corporate reorganization" as a potential alternative to asset blocking). Plaintiffs also asked for "immediate access to the administrative record upon which the challenged designations were based." J.A. 106.

---

[1] Lucia Touzard Romo, a lawyer at Grupo Wisa, was initially a plaintiff in this action. However, during the pendency of this appeal, OFAC notified the court that she is no longer designated as a Trafficker and thus is no longer a party to the suit. *See Fares v. Smith*, No. 17-5075, Dkt. No. 1711681 (D.C. Cir. Jan. 5, 2018).

In June, OFAC denied the request for reconsideration, noting that plaintiffs had not presented any "evidence or argument to support a finding that there was an insufficient basis for the designations." J.A. 111-13. OFAC rejected the proposed trust terms because they explicitly provided "for continuing control by the [traffickers], and otherwise fail[ed] to sever all ownership and interest by the [traffickers]." J.A. 112. Because the Kingpin Act does not limit the number of times that a designated individual may seek reconsideration, *see* 31 C.F.R. § 501.807, the agency suggested that, if plaintiffs "further developed or clarified" their request, they could again seek reconsideration of their trafficker designation, J.A. 111-12.

OFAC advised plaintiffs that, in the meantime, it was processing their request for production of the administrative record underlying their designation. J.A. 113. The agency warned that it might be some time, however, because of the "extensive interagency consultation in order to comply with U.S. government regulations regarding the protection of classified, privileged, and otherwise protected information" that constituted much of the evidence. J.A. 112-13.

In July, plaintiffs received the underlying administrative record in two batches pursuant to "rolling production" of the record "as it [was] processed." J.A. 117-18, 207-08. As produced to plaintiffs, the record was very heavily redacted. OFAC represented that "law enforcement sensitivity" or other forms of "privilege" necessitated the near-complete redaction of the evidence underlying plaintiffs' designation. J.A. 117, 207. The material was not classified *per se*, but it nevertheless could not be released because of its relationship to ongoing investigations. The redacted information identified details about investigative targets or informants and its disclosure

therefore would frustrate continued law-enforcement efforts or put individuals in significant, perhaps mortal, danger. *See* Oral Arg. Tr. 27:25-29:17. The government specifically affirmed that all of the redacted information is law enforcement sensitive, so no more information could be revealed from the existing record. *Id.* at 29:8-16. OFAC promised that, "should additional unclassified, non-privileged, or otherwise releasable information become available," the agency would turn over any such material to plaintiffs. J.A. 117, 207.

Plaintiffs sued the agency on August 25, 2016, and filed for summary judgment the same day. *Fares v. Smith*, No. 16-1730, Dkt. No. 1 (D.D.C. Aug. 25, 2016) (Compl.); *Fares v. Smith*, No. 16-1730, Dkt. No. 3 (D.D.C. Aug. 25, 2016) (Pls.' Mot. for Summ. J.). They contended that OFAC had violated their procedural due process rights by failing to give sufficient post-deprivation notice of the grounds for their designation, and they asked the court to "[d]eclare" the redacted administrative record constitutionally insufficient to justify their designation and "[o]rder" the agency to "provide an unredacted copy of their administrative record" or otherwise to provide "adequate post-designation notice." Compl. at 11. Plaintiffs brought a parallel challenge under the Administrative Procedure Act (APA), but argued to the district court that, for purposes of this case, the APA's protections are coextensive with those of the Due Process Clause, so the APA claim rises and falls with the due process claim. *Fares v. Smith*, 249 F. Supp. 3d 115, 129 (D.D.C. 2017). As a consequence, this opinion discusses only the due process claim, which has been the focus of the parties' arguments.

The day after plaintiffs filed suit, on August 26, 2016, OFAC furnished an unclassified summary of the underlying evidence that the agency had redacted from the administrative record. *See* J.A. 384-85. It was terse, only two paragraphs.

Two months later, on October 28, the agency produced a more substantial summary spanning several pages. *See* J.A. 387-91. The summaries together identify several specific allegations motivating the plaintiffs' designation.

We present the allegations as if they were fact, but we have no way of evaluating their veracity—they are wholly untested. *See People's Mojahedin Org. of Iran v. Dep't of State*, 182 F.3d 17, 19 (D.C. Cir. 1999) (*People's Mojahedin I*) ("What follows . . . may or may not be facts. The information recited is certainly not evidence of the sort that would normally be received in court."). We chronicle these allegations only to lay out the case the government says it has against plaintiffs, as explained by the summaries:

*First*, Grupo Wisa operated stores that were hubs for "launder[ing] drug proceeds via bulk cash smuggling and false commercial invoicing." J.A. 385. Couriers working with international drug-trafficking organizations "transport[ed] bulk cash to and through" these stores, and "drug proceeds [we]re subsequently laundered via the stores using false invoices, in order to legitimize the illicit funds." J.A. 385. Specifically, the company deposited drug proceeds into Panamanian banks, sold products to businesses in Colombia, and "use[d] false invoices to deposit cash as payment for merchandise" in Panama. J.A. 391. The company "received bulk drug proceeds" from the Sinaloa Cartel, as well as other criminal organizations. J.A. 391. Several Grupo Wisa stores were identified as involved. The stores at the Tocumen Airport in Panama City laundered millions of dollars in drug proceeds, facilitated by bulk-cash transfers in suitcases flown there on commercial flights from around the world. J.A. 391. At that airport, couriers delivered cash to the stores, and bribed airport officials. J.A. 391. The Grupo Wisa-owned stores at the La Aurora Airport in Guatemala City participated in the same scheme; the Public

Ministry of Guatemala shuttered those businesses for alleged customs fraud. J.A. 376.

*Second*, plaintiffs used commercial real estate investments, bank loans, and other cash transactions to launder drug money, including in connection with two specific commercial real estate developments in Panama, the Millennium Plaza and the Soho Complex. J.A. 225, 391. Fares bribed local authorities in connection with these projects. J.A. 391. He also used shell companies and other property holdings as collateral for loans that helped obscure the money's connection to drug trafficking. J.A. 391.

*Third*, Fares controlled Balboa Bank and Trust, another organization designated by OFAC but not a party to this case. J.A. 202, 391. He used the bank to deposit bulk drug proceeds in Panama, where he controlled accounts for "hundreds" of companies, some real and others apparently fictional, to move drug money around. J.A. 391. Fares took commissions from trafficker-clients for his money-laundering services. J.A. 391.

*Fourth*, another, earlier-designated trafficker, Ali Harb, was one of Fares's major clients. J.A. 391. The conduit for their money-laundering transactions in 2014 was a supplier of "home appliances that [were] paid for in Panama." J.A. 391.

These specific allegations (rather than the summaries' more general atmospherics) appear to describe the entire basis of plaintiffs' designation, such that if plaintiffs could rebut all of these particular allegations in submissions to OFAC, plaintiffs would be entitled to be delisted. *See Holy Land*, 333 F.3d at 163 (citing *NCORI*, 251 F.3d at 209). The parties acknowledge that plaintiffs have already begun to do exactly that: In March 2017, they submitted to the agency an independent audit—completed by a professional-services and

auditing firm—which focused on "specific transactions at some of these duty-free stories." Oral Arg. Tr. 46:5-18.

After producing the unclassified summaries, the government moved for summary judgment on the ground that plaintiffs now had sufficient information about the basis of their designation to substantively challenge it. *See Fares v. Smith*, No. 16-1730, Dkt. No. 14 at 11-13 (D.D.C. Nov. 4, 2016). Plaintiffs adhered to their initial, broad position, despite the government's intervening production of the unclassified summaries. Plaintiffs maintained that the summaries simply were not good enough because they did not disclose or sufficiently detail the sources and nature of the underlying evidence. *See Fares v. Smith*, No. 16-1730, Dkt. No. 17 at 1 (D.D.C. Nov. 22, 2016).

The district court granted the government's summary judgment motion. *Fares*, 249 F. Supp. 3d at 118. The court held that, for due process purposes, OFAC's unclassified summaries gave sufficient detail about the factual bases of the government's conclusion that plaintiffs laundered money for international drug cartels, including the relevant time period and the businesses involved, to allow plaintiffs to understand and contest the designation. *Id.* at 127-29. This appeal followed.

III.

This case is unlike other legal challenges leveled by individuals designated under the Kingpin Act or other asset-freezing statutes, such as the IEEPA and AEDPA. Typically, individuals and businesses designated on the basis of redacted or withheld evidence not only bring procedural due process claims, but also substantively challenge their designation as unsupported in fact. *See, e.g.*, *Zevallos*, 793 F.3d at 112-14;

*Holy Land*, 333 F.3d at 160-61; *NCORI*, 251 F.3d at 198-99; *Al Haramain Islamic Found., Inc. v. Dep't of Treasury*, 686 F.3d 965, 976-79 (9th Cir. 2012) (*Al Haramain*); *KindHearts for Charitable Humanitarian Dev., Inc. v. Geithner*, 647 F. Supp. 2d 857, 916-18 (N.D. Ohio 2009) (*KindHearts I*); *see also People's Mojahedin I*, 182 F.3d at 24.

Designees may also challenge the legitimate scope of the redactions. *See, e.g.*, *KindHearts I*, 647 F. Supp. 2d at 868-69, 903. And they may press the government to substantiate its claim of privilege. *See Tuite v. Henry*, 98 F.3d 1411, 1417 (D.C. Cir. 1996) (explaining that, where an individual challenges an agency's claim of privilege, this court requires: "(1) a formal claim of privilege by the head of the department having control over the requested information; (2) assertion of the privilege based on actual personal consideration by that official; and (3) a detailed specification of the information for which the privilege is claimed with an explanation why it properly falls within the scope of the privilege").

Designees can contest that agency disclosure of some but not all of the allegations against them impairs their ability to fully clear their names for delisting, leaving them "stumbl[ing] towards a moving target." *Zevallos*, 793 F.3d at 118; *see NCORI*, 251 F.3d at 209 (requiring that designees have "the opportunity to present . . . such evidence as those entities may be able to produce to rebut the administrative record or otherwise negate the proposition" supporting the government's designation); *Al Haramain*, 686 F.3d at 986 (holding that OFAC's disclosure of "only one of three reasons for its investigation and designation" rendered the notice "incomplete" such that it did "not meet the requirements of due process").

Courts have also held that effective judicial review may necessitate examination of the full administrative record *in camera*, either *ex parte* or with the designee's lawyer present as cleared counsel (able to verify the government's grounds but not report them back to the client). *See, e.g.*, *Al Haramain*, 686 F.3d at 983-84; *KindHearts for Charitable Humanitarian Dev., Inc. v. Geithner*, 710 F. Supp. 2d 637, 660 (N.D. Ohio 2010) (*KindHearts II*); *see also Bismullah v. Gates*, 501 F.3d 178, 187-88 (D.C. Cir. 2007), *judgment vacated*, 554 U.S. 913 (2008), *dismissed for lack of jurisdiction*, 551 F.3d 1068 (D.C. Cir. 2009). That review can prompt a court, having looked at the classified material, to find that the "use of the undisclosed information . . . would constitute a due process violation." *Am.-Arab Anti-Discrimination Comm. v. Reno*, 70 F.3d 1045, 1054 (9th Cir. 1995) (*ADC*); *see Bismullah*, 501 F.3d at 187 ("[T]his court cannot discharge its responsibility . . . unless a petitioner's counsel has access to as much as is practical of the classified information regarding his client.").

But plaintiffs here pressed none of these arguments. They have not substantively challenged their designation as traffickers or asked for more detail regarding the nature of the allegations they face. They have not claimed that the extensive redactions to the administrative record are legally impermissible or that these withholdings exceed the scope of the government's asserted law enforcement interest. Plaintiffs have not pressed for a formal claim of privilege by the relevant agency head. In fact, they have not urged the district court or this court to review the unredacted record *in camera* for any purpose.

Instead, plaintiffs present a single claim on a single theory. They insist that the court must order the agency to turn over the actual underlying evidence (or details regarding that evidence that would aid them in identifying its sources), or else require

the agency to delist plaintiffs. Plaintiffs' all-or-nothing argument fails.

To determine whether OFAC's designation of a plaintiff provides constitutionally adequate notice—enabling him meaningfully to avail himself of his opportunity to be heard—courts weigh three factors under the familiar *Mathews v. Eldridge* balancing test: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; (3) and "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S 319, 335 (1976); *see NCORI*, 251 F.3d at 206-09 (applying *Mathews* to this court's evaluation of the designation process under AEDPA); *Al Haramain*, 686 F.3d at 979-80 (similarly applying *Mathews* in reviewing a designation).

As a general matter, the effect of an OFAC designation on the designee's private interests is "dire." *NCORI*, 251 F.3d at 196; *see Al Haramain*, 686 F.3d at 979-80. "By design, a designation by OFAC completely shutters all domestic operations of an entity" and can render it "indefinitely . . . financially defunct." *Al Haramain*, 686 F.3d at 979-80. Plaintiffs here represent that their "business was effectively destroyed with the stroke of a pen when OFAC designated Appellants as drug money launderers under the Kingpin Act." Oral Arg. Tr. 3:16-19.

When the government freezes assets based on redacted evidence—thereby limiting the designee's opportunity to probe or cross-examine on that evidence—the risk of erroneous deprivation is especially high. *See NCORI*, 251 F.3d at 196-

97; *Al Haramain*, 686 F.3d at 980; *ADC*, 70 F.3d at 1069 ("As judges, we are necessarily wary of one-sided process [because] . . . . there is an exceptionally high risk of erroneous deprivation when undisclosed information is used. . . ."). But we have rejected the argument that a designation violates due process simply because the agency "rel[ies] upon . . . classified information that [the government] refused to disclose." *People's Mojahedin II*, 327 F.3d at 1241-42. Instead, in narrow circumstances, we have authorized strictly necessary adaptations of ordinary administrative and judicial process to ensure a designee's notice and process via alternative means, while respecting compelling national security interests.

Plaintiffs here—challenging only the sufficiency of the post-deprivation notice provided by OFAC's summaries—rest their case on a faulty and fatal assumption that, under this court's precedent, "whether OFAC's blanket redactions are appropriate is *irrelevant*." Pls.' Mot. for Summ. J. at 12 (emphasis added). Plaintiffs mischaracterize precedent. Contrary to their argument, courts treat as a critical factor whether the government can disclose more and, if so, at what practical cost to the governmental interests at stake.

Excluding parties from directly accessing the evidence against them is strongly disfavored, *Rafeedie v. INS*, 880 F.2d 506, 516 (D.C. Cir. 1989), so reliance on undisclosed classified evidence is permissible "[o]nly [in] the most extraordinary circumstances," *ADC*, 70 F.3d at 1070. We have countenanced the use of undisclosed classified evidence to form the basis of a designation and freeze an individual's assets in extraordinary circumstances, where the government's withholding is justified by "the privilege and prerogative of the executive" in protecting vital national security interests. *NCORI*, 251 F.3d at 208; *People's Mojahedin II*, 327 F.3d at 1242; *Holy Land*, 333 F.3d at 164.

Forcing the executive branch to disclose information that it has validly classified would "compel a breach in the security which that branch is charged to protect." *NCORI*, 251 F.3d at 208-09; *see Holy Land*, 333 F.3d at 164; *People's Mojahedin II*, 327 F.3d at 1242; *see also Jifry v. FAA*, 370 F.3d 1174, 1183 (D.C. Cir. 2004). We have "already decided . . . that due process required the disclosure of *only* the unclassified portions of the administrative record." *People's Mojahedin II*, 327 F.3d at 1242. As the Ninth Circuit explained, "[g]iven the extreme importance of maintaining national security, we cannot accept [plaintiff]'s most sweeping argument—that OFAC is not entitled to use classified information in making its designation determination." *Al Haramain*, 686 F.3d at 980-81 (collecting cases). As a consequence, in certain limited circumstances, in lieu of classified evidence the government may provide designees with sufficiently specific "unclassified summaries . . . ensuring that neither the [government]'s sources nor national security were compromised, . . . [that] provide [plaintiffs] with the 'who,' 'what,' 'when' and 'where' of the allegations." *Kiareldeen v. Ashcroft*, 273 F.3d 542, 548 (3d Cir. 2001); *see Al Haramain*, 686 F.3d at 982-83.

In light of precedent countenancing the use of summaries under the most pressing circumstances, plaintiffs' all-or-nothing argument is untenable. As a threshold matter, the relevant precedent speaks in terms of the executive's prerogative to withhold "classified information," *see, e.g.*, *Holy Land*, 333 F.3d at 164; *NCORI*, 251 F.3d at 208-09, while the underlying evidence here was withheld instead as unclassified "law enforcement sensitive" information, *see, e.g.*, J.A. 119. There may well be relevant differences between withholding information on these two grounds, *cf. Al-Aqeel v. Paulson*, 568 F. Supp. 2d 64, 72 (D.D.C. 2008); *see generally Tuite*, 98 F.3d 1411 (discussing "law enforcement investigatory privilege"),

but plaintiffs fail to press any such distinction. Instead, they have invited us to assume that the information withheld here is as protected as classified information. *See* Pls.' Mot. for Summ. J. at 12 & n.5. As a consequence, we treat the underlying evidence at issue here as if it were classified.

More fundamentally, plaintiffs contend that the legitimate scope of the government's withholdings is "irrelevant," Pls.' Mot. for Summ. J. at 12—a contention that virtually concedes their case. The government represents that uncovering any additional increment of the redacted information or its sources would compromise ongoing law enforcement efforts, potentially even risking bodily harm or death to individuals. *See* Oral Arg. Tr. 27:24-29:17. Plaintiffs, meanwhile, have functionally told us to accept this representation by treating each and every redaction as legitimately classified. Pls.' Mot. for Summ. J. at 12; *see* Oral Arg. Tr. 4:4-7 ("[W]e're not challenging here the Executive's privilege or prerogative to enforce law enforcement's sensitive privileged information, and withhold that."); *id.* at 32:11-13 (government counsel asserting that "the Plaintiffs here have not ever sought to challenge the basis for those law enforcement privileged redactions"). We must therefore assume, without deciding, that the full extent of the withholding of evidence and its sources was justified by national security interests of the highest order. *See NCORI*, 251 F.3d at 208. It follows from that assumption that the government simply could not disclose more, under *Mathews*'s third prong—at least not without compromising ongoing enforcement efforts, endangering people's lives, and undermining national security. That logical, albeit hypothetical, conclusion is fatal to plaintiffs' procedural due process claim.

The case comes to us in a posture that is both theoretical and extreme. We must treat the undisclosed portion of the

administrative record as if it contained the most highly sensitive classified information and assume that any more specificity about the evidentiary sources supporting the designation would certainly and necessarily compromise national security. Demanding a choice between "declin[ing] to designate the entity or . . . reveal[ing] the classified information" to the designee is "overreaching." *Al Haramain*, 686 F.3d at 980-81 (collecting cases). No court faced with such a cabined choice has held in favor of plaintiffs. *See id.*

Perhaps recognizing the error of their ways, plaintiffs at oral argument appeared to retreat from the position staked out in their briefing. For the first time, they faulted the government for failing to have "made an affirmation that it cannot make a non-privileged evidentiary disclosure." Oral Arg. Tr. 25:16-18. But that argument fails because it is the product of plaintiffs' own litigating tactics. The government represented that it was prepared to justify its withholdings via affidavits from agency personnel and to go forward with *in camera* review; but plaintiffs simply never challenged the scope or extent of the redactions. Oral Arg. Tr. 32:9-17; 33:25-34:11; 36:13-18. Plaintiffs never pressed any argument that called for justifications from the government or engagement by the court regarding the scope or legitimacy of the specific record withholdings.

Plaintiffs declined to take the multiple routes open to them to challenge their designation in a way that could have enhanced their procedural protections without compromising the government's and public's interest in withholding classified information. Instead, plaintiffs chose to mount an all-or-nothing challenge seeking the particular evidence against them or more information about the sources of that evidence. And plaintiffs pressed this sole claim without questioning the appropriateness or scope of the agency's

extensive redactions of the record or asking the court to review them *in camera*. We thus affirm the district court's grant of the government's motion for summary judgment.

Conclusion

Designating individuals as traffickers unquestionably implicates serious due process concerns. But plaintiffs here have pursued a single, artificially extreme argument—one that is unsupported by precedent. For that reason, we affirm the district court's grant of summary judgment for the government.

As this court has emphasized, there is "no limit on the number of times a designated person can request delisting." *Zevallos*, 793 F.3d at 115 (citing 31 C.F.R. § 501.807). We recognize that this is not plaintiffs' last or only chance to contest their designation.

*So ordered.*