# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

—————

Argued January 19, 2024          Decided March 12, 2024

No. 23-5036

SAMARK JOSE LOPEZ BELLO,
APPELLANT

v.

ANDREA M. GACKI, IN HER OFFICIAL CAPACITY AS DIRECTOR
OF THE OFFICE OF FOREIGN ASSETS CONTROL AND UNITED
STATES DEPARTMENT OF THE TREASURY OFFICE OF FOREIGN
ASSETS CONTROL,
APPELLEES

—————

Appeal from the United States District Court
for the District of Columbia
(No. 1:21-cv-01727)

—————

*Erich C. Ferrari* argued the cause and filed the briefs for
appellant.

*Benjamin M. Shultz*, Attorney, U.S. Department of Justice,
argued the cause for appellees. With him on the brief were
*Brian M. Boynton*, Principal Deputy Assistant Attorney
General, and *Sharon Swingle*, Attorney.

Before: SRINIVASAN, *Chief Judge*, HENDERSON, *Circuit
Judge*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: The Office of Foreign Assets Control (OFAC), a part of the U.S. Department of the Treasury (Treasury), named two Venezuelan men as Specially Designated Narcotics Traffickers (SDNTs or Traffickers). OFAC designated Tareck Zaidan El Aissami for "playing a significant role in international narcotics trafficking," *see* 21 U.S.C. § 1904(b)(4), and Samark Jose Lopez Bello for materially assisting in that trafficking and providing support to El Aissami. *See id.* § 1904(b)(2)–(3). In this action, Lopez Bello alleged that OFAC and its Acting Director erred in designating him a Trafficker. The district court rejected his challenge and we affirm.

**I.**

The Foreign Narcotics Kingpin Designation Act (Kingpin Act), 21 U.S.C. §§ 1901–1908, authorizes the President or the Treasury Secretary to name persons as Traffickers. The Kingpin Act authorizes the imposition of sanctions on Traffickers, their organizations and supporting persons whose "activities threaten the national security, foreign policy, and economy of the United States." *Id.* § 1902. The President and the Secretary can designate so-called Tier 1 Traffickers—those who play "a significant role in international narcotics trafficking." *Id.* §§ 1903 (President's authority), 1904(b)(4) (Secretary's authority), 1907(7). The Secretary can also designate as so-called Tier 2 Traffickers (1) those who materially assist, provide financial or technological support for or to, or provide goods or services in support of a Tier 1 Trafficker's trafficking activities, and (2) those who support or act for or on behalf of Tier 1 Traffickers. *Id.* § 1904(b)(2)–(3). The Secretary has delegated his Kingpin Act authority to the

OFAC Director. 31 C.F.R. § 598.803. A Trafficker designation—Tiers 1 and 2—blocks all of the designee's assets in the United States or under the control of persons in the United States. 21 U.S.C. § 1904(b). All assets are "effectively frozen." *Zevallos v. Obama*, 793 F.3d 106, 110 (D.C. Cir. 2015). No person can transact or deal with the frozen property, as doing so risks civil and/or criminal penalties. 21 U.S.C. §§ 1904(c), 1906(a)–(b).

Designation under the Kingpin Act is analogous to several other Executive Branch designations. *See Fares v. Smith*, 901 F.3d 315, 318 (D.C. Cir. 2018). The Congress based the Kingpin Act on Executive Order 12978's successful application of the International Emergency Economic Powers Act (IEEPA) against Colombian narcotics Traffickers. H.R. Rep. No. 106-457, at 42 (1999) (Conf. Rep.); *see* Exec. Order No. 12,978, 60 Fed. Reg. 54579 (Oct. 21, 1995); 50 U.S.C. §§ 1701–1707. IEEPA is itself analogous to the antiterrorism provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 8 U.S.C. § 1189. Under IEEPA, AEDPA and the Kingpin Act, any designated person or entity is added to the "Specially Designated Nationals and Blocked Persons List" and subject to asset freezing. *See Zevallos*, 793 F.3d at 110; 31 C.F.R. § 501.807(a).

A Kingpin Act designee "may seek administrative reconsideration" before OFAC and request "delisting." 31 C.F.R. § 501.807. The designee may submit evidence that demonstrates "the insufficient basis" for the designation or that "circumstances resulting in the designation no longer apply." *Id.* Said another way, the designee must show that OFAC's basis for designation "was never true or is no longer true." *Zevallos*, 793 F.3d at 110. OFAC reviews the reconsideration request and subsequently provides a written decision. 31 C.F.R.

§ 501.807(d). A designee can request delisting "as many times as he likes." *Zevallos*, 793 F.3d at 110.

Lopez Bello, a citizen of Venezuela and Italy, ran several corporations related to the Venezuelan oil and gas industries. He also conducted business in the United States, held U.S. visas and resided in Florida. OFAC simultaneously designated El Aissami and Lopez Bello in 2017. *Sanctions Actions Pursuant to the Foreign Narcotics Kingpin Designation Act*, 82 Fed. Reg. 11101, 11101–02 (Feb. 17, 2017). OFAC designated El Aissami, then Executive Vice President of Venezuela, as a Tier 1 Trafficker under 21 U.S.C. § 1904(b)(4) and Lopez Bello as a Tier 2 Trafficker under § 1904(b)(2)–(3). *Id.* The designation also blocked thirteen entities and an aircraft, all associated with Lopez Bello.[1] *Id.* A Treasury press release explained that Lopez Bello served as a "frontman," handled "business arrangements and financial matters" and laundered drug proceeds on El Aissami's behalf.[2]

Lopez Bello requested the full administrative record supporting his designation and blocking. In response, OFAC provided the administrative record supporting designation but redacted classified, privileged and law enforcement sensitive information pursuant to 21 U.S.C. § 1903(e). OFAC also provided him with a copy of the Designation and Blocking Memorandum, the Federal Register notice and the press release

---

[1]   Based on OFAC's factual findings, third-party plaintiffs holding judgments against the Revolutionary Armed Forces of Colombia (FARC) have successfully executed on some of the blocked assets. Other assets remain subject to post-judgment writs of garnishment and execution. J.A. 68–69.

[2]   *Treasury Sanctions Prominent Venezuelan Drug Trafficker Tareck El Aissami and His Primary Frontman Samark Lopez Bello*, U.S. DEP'T OF THE TREASURY (Feb. 13, 2017), https://perma.cc/7PHT-TJTN.

related to his designation. OFAC then produced an unclassified summary of the redacted information. The summary noted Lopez Bello's: money laundering of drug proceeds through state-owned oil company Petroleos de Venezuela, S.A.; organization of trans-continental air and maritime cocaine routes; purchase of Venezuelan news outlets on El Aissami's behalf; management of El Aissami's financial matters; and procurement of vehicles in the U.S. that were transported to Venezuela and given to El Aissami and other government officials.

Lopez Bello requested administrative reconsideration pursuant to 31 C.F.R. § 501.807. OFAC sought additional information from Lopez Bello, who received numerous extensions to respond. In summer 2021, Lopez Bello voluntarily withdrew his petition and OFAC closed the matter. Lopez Bello then sued OFAC and its Acting Director in district court, seeking the vacatur of his and his companies' designation. He pressed various claims, including that OFAC's designation constituted arbitrary and capricious action, went beyond OFAC's statutory authority, deprived Lopez Bello of fair notice and resulted in an unconstitutional seizure of property. He additionally claimed that OFAC failed to provide sufficient post-deprivation notice. OFAC provided the district court with classified portions of the administrative record *ex parte*, *in camera*.

OFAC moved to dismiss or in the alternative for summary judgment. Lopez Bello cross-moved for summary judgment. The district court granted OFAC's motion to dismiss. *Lopez Bello v. Smith*, 651 F. Supp. 3d 20 (D.D.C. 2022). According to the court, OFAC reasonably examined the record and articulated a satisfactory explanation for its designation of Lopez Bello. *Id.* at 33–34. OFAC's simultaneous designation of El Aissami and Lopez Bello—notwithstanding that Lopez

Bello's Tier 2 designation was based on his support of El Aissami—did not, in the court's view, exceed the agency's statutory authority under the Kingpin Act. *Id.* at 35–36. Moreover, the court held, simultaneous designation did not deprive Lopez Bello of fair notice of prohibited conduct. *Id.* at 41–42. It further held that blockage of Lopez Bello's assets did not violate his Fourth Amendment protection against seizure. *Id.* at 45. Finally, the court concluded that OFAC provided Lopez Bello with sufficient post-deprivation notice to satisfy due process. *Id.* at 43–44. Lopez Bello timely appealed the district court's dismissal.

Parallel to the OFAC litigation, a grand jury in the Southern District of New York indicted Lopez Bello and others for engaging in transactions prohibited by the Kingpin Act. *See* Superseding Indictment, *United States v. El Aissami Maddah*, No. 19-cr-144 (S.D.N.Y. Mar. 8, 2019). Lopez Bello is now a fugitive and refuses to return to the United States to stand trial. *See United States v. Lopez Bello*, No. 19-cr-144, 2023 WL 3199968, at *1 (S.D.N.Y. May 2, 2023).[3]

## II.

Our review of a Rule 12(b)(6) dismissal is de novo. *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 732 (D.C. Cir. 2007). Although we accept the complaint's factual allegations as true, we need not "accept inferences that are unsupported by the facts set out in the complaint." *Id.* (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)). Lopez Bello raises three claims on appeal: (1) simultaneous

---

[3] U.S. Immigration and Customs Enforcement has listed Lopez Bello as one of their most wanted individuals and offered a $5,000,000 reward for information leading to his arrest. *See* U.S. Immigr. and Customs Enf't, *Most Wanted: Samark Jose Lopez-Bello*, https://perma.cc/88CW-2FDC (last visited Feb. 6, 2023).

designation is beyond OFAC's statutory authority; (2) simultaneous designation deprives a designee of fair notice of prohibited conduct; and (3) OFAC failed to provide sufficient post-deprivation notice. We reject each claim.

### A. Simultaneous Designation under § 1904(b)(2)–(3)

We begin with Lopez Bello's statutory challenge. He contends that the Kingpin Act's plain language and legislative history prohibit OFAC from derivatively designating a Tier 2 Trafficker at the same time it designates the relevant Tier 1 Trafficker. We disagree. The best reading of 21 U.S.C. § 1904(b)(2)–(3) permits simultaneous designation of a Tier 1 Trafficker and a derivative Tier 2 Trafficker.

We start with the text. The Kingpin Act authorizes Tier 2 designation for persons assisting in the trafficking activities of or acting on behalf of a "significant foreign narcotics trafficker so identified in the [President's] report" or "foreign persons *designated by* the Secretary of Treasury [or OFAC] pursuant to this subsection." 21 U.S.C. § 1904(b)(2)–(3) (emphasis added). The text does not require that the "significant foreign narcotics trafficker[s]" or "foreign persons" be "previously" or "already" designated. Lopez Bello argues that the statute's past participle "designated" imposes such a temporal requirement. According to him, the phrase "designated by the Secretary" necessarily means *already* designated, that is, before Tier 2 designation. The Court rejected a similar argument in *Rural Cellular Association v. FCC*, 685 F.3d 1083, 1092 (D.C. Cir. 2012). Based on precedent interpreting similar adjectival phrases as temporally ambiguous, the *Rural Cellular* Court accepted the FCC's interpretation that "established by the Commission" covered establishment in the past, present or future. *Id.* at 1092–93 (citing *Regions Hosp. v. Shalala*, 522 U.S. 448, 458 (1998) and *Dep't of Treasury v. FLRA*, 960 F.2d 1068, 1072

(D.C. Cir. 1992)). Because "designated by" is a temporally ambiguous adjectival phrase, we adhere to OFAC's interpretation that the statutory provision includes both past and simultaneous designations.[4]

The Kingpin Act's purpose reinforces our understanding of the text. According to the Act, foreign narcotics Traffickers and their organizations "threaten the national security, foreign policy, and economy of the United States." 21 U.S.C. § 1902. The Act's "bottom line objective . . . is to bankrupt and disrupt the major narcotics trafficking organizations" and "those involved in their illicit activities." H.R. Rep. No. 106-457, at 43 (1999) (Conf. Rep.). Achieving this objective requires taking "immediate action upon designation to avoid dissipation of affected assets." *Id.* at 47. Not taking immediate action, such as by providing pre-deprivation notice, "would create a substantial risk of asset flight." *Zevallos*, 793 F.3d at 116; *see also* H.R. Rep. No. 106-457, at 47. Although Lopez Bello asserts that OFAC must designate a Tier 1 Trafficker first and *then* identify anyone assisting, supporting or acting on behalf of the designated Trafficker, his interpretation hamstrings the Kingpin Act's stated purpose of bankrupting and disrupting narcotics Traffickers by allowing not-yet-designated Tier 2 Traffickers to drain assets after a Tier 1 Trafficker designation occurs. Simultaneous designation upholds the Act's purpose.

The history preceding the Kingpin Act's enactment buttresses simultaneous designation. The Congress explicitly based the Kingpin Act on Executive Order No. 12978's use of

---

[4] At oral argument, the Court questioned whether "designated by" encompasses future designation. Oral Arg. Tr. 13:20–22. In other words, could OFAC designate a Tier 2 Trafficker *before* designating the relevant Tier 1 Trafficker? OFAC noted it has likely never made such a designation under the Kingpin Act, Oral Arg. Tr. 14:15–15:11, and we express no view about whether it could.

IEEPA against Colombian narcotics Traffickers. *See* 21 U.S.C. § 1901(a). The Executive Order itself designated several drug kingpins. The Order also permitted Treasury to designate significant Traffickers and those *who materially assist or support* trafficking activities "of persons designated in or pursuant to this order." Exec. Order No. 12,978, 60 Fed. Reg. 54579 (Oct. 21, 1995) (emphasis added). For example, the Treasury simultaneously designated Julio Cesar Nasser David as a significant Trafficker and "4 associated individuals."[5] Even under the Kingpin Act's predecessor Executive Order, Treasury used IEEPA to simultaneously designate a Tier 1 Trafficker and relevant Tier 2 Traffickers.[6]

Lopez Bello overstates the Kingpin Act's legislative history. A House Conference Report recites that the Executive Order permits designation of persons materially assisting "the named drug kingpins or other, *already designated* SDNTs." H.R. Rep. No. 106-457, at 46 (emphasis added). Given the Treasury's simultaneous designation of Nasser David and his associates, however, this sentence inaccurately describes how Treasury exercises its Executive Order-IEEPA authority. Regardless, the comment addresses only the Executive Order program; it does not suggest that the Kingpin Act will function accordingly. Nor does OFAC's implementation of the Executive Order via research on foreign targets "that can be linked by evidence to individuals or entities *already*

---

[5] U.S. Dep't of the Treasury, Press Release, *Treasury Names Fronts for the Colombian Drug Cartels* (May 26, 1998), https://perma.cc/M4SE-TVPF.

[6] OFAC regularly makes Tier 1-Tier 2 simultaneous designations under the Kingpin Act. *See, e.g.*, OFAC, U.S. Dep't of the Treasury, *Sanctions Pursuant to the Foreign Narcotics Kingpin Act*, 10–29, https://perma.cc/G6UJ-DDF9 (last visited Feb. 7, 2024). See *id.* at 28 for the simultaneous designations of El Aissami and Lopez Bello.

designated," H.R. Rep. No. 106-457, at 47 (emphasis added), foreclose simultaneous designation. And it does not state that OFAC *only* researched persons linked to designated individuals. Thus, neither of Lopez Bello's references to the legislative history conflicts with our view of 21 U.S.C. § 1904(b)'s text, purpose and history.

We conclude that the best reading of 21 U.S.C. § 1904(b) permits simultaneous designation of a Tier 1 Trafficker and a derivative Tier 2 Trafficker. Lopez Bello's contention that he conducted no sanctionable conduct before El Aissami's designation is inapposite. When Lopez Bello assisted El Aissami—a not-yet-designated Tier 1 Trafficker—he was on notice that he, too, could be designated by OFAC. For these reasons, we conclude that the Kingpin Act permits OFAC to designate a Tier 2 Trafficker and any relevant Tier 1 Trafficker at the same time.

## B.   Simultaneous Designation and "Fair Notice"

We turn to Lopez Bello's argument that simultaneous designation deprives potential designees of "fair notice" of sanctionable conduct in violation of the Due Process Clause. According to Lopez Bello, his alleged conduct occurred before El Aissami's designation and thus before Lopez Bello had notice that he was assisting or supporting a Tier 1 Trafficker.[7]

---

[7] We have held that the government can sanction a foundation based on evidence tying it to a terrorist organization *before* the organization's terrorist designation occurs. *Holy Land Found. for Relief and Dev. v. Ashcroft*, 333 F.3d 156, 162 (D.C. Cir. 2003). In that IEEPA case, the Court affirmed Treasury's consideration of the ties because "no plausible evidence" "showed that these ties [between the foundation and terrorist organization] had been severed." *Id.* Similarly, OFAC could rely on information regarding

Due Process requires that a law "give fair notice of conduct that is forbidden or required." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). This requirement "'is implicated' whenever the government imposes 'civil penalties.'" *Karem v. Trump*, 960 F.3d 656, 664 (D.C. Cir. 2020) (quoting *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574 n.22 (1996)). We consider whether a regulated party received adequate notice of the agency's interpretation "in the most obvious way of all: by reading the regulations." *General Elec. Co. v. EPA*, 53 F.3d 1324, 1329 (D.C. Cir. 1995). But "[e]ven trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid." *Fed. Express Corp. v. Dep't of Com.*, 39 F.4th 756, 773 (D.C. Cir. 2022) (quoting *U.S. v. Bronstein*, 849 F.3d 1101, 1107 (D.C. Cir. 2017)). Thus, we ask "whether the law or regulation 'provides a discern[i]ble standard when legally construed.'" *Id.*

The Kingpin Act provides a discernible standard that is reasonably comprehensible to the public. The Tier 2 provisions cover persons "materially assisting in, or providing financial or technological support for or to, or providing goods or services in support of" a Tier 1 Trafficker's trafficking activities or "acting for or on behalf of" a Tier 1 Trafficker. 21 U.S.C. § 1904(b)(2)–(3). The provisions do not require a Tier 2 Trafficker to "knowingly" or "recklessly" assist or support. The Congress' omission of a mens rea requirement carries great weight here because other provisions in the Kingpin Act do have heightened mens rea requirements. The Act's criminal penalties apply only to persons who "willfully" or "knowingly"

---

Lopez Bello's assistance and support before El Aissami's designation. To the extent Lopez Bello has severed ties to El Aissami, he can seek delisting. *See* 31 C.F.R. § 501.807.

violate the Act. 21 U.S.C. § 1906(a); *see also Fed. Express Corp.*, 39 F.4th at 773 (statute's express mens rea requirement "for criminal penalties, but silence as to civil sanctions, gives notice that civil penalties may be assessed on a strict liability basis"). The Kingpin Act also defines the term "narcotics trafficking" with specificity. *See* 21 U.S.C. § 1907(3).[8] The public is on notice that Kingpin Act designation may occur even if the designee lacks a specific mens rea.

Further, the public is on notice that OFAC has previously designated Tier 1 and Tier 2 Traffickers simultaneously, at least since 2010. *See supra* note 6. The public is also on notice that assisting a not-yet-designated Tier 1 Trafficker subjects an aider to potential OFAC sanction as a Tier 2 Trafficker. A designee can always, and repeatedly, seek delisting by showing that the circumstances supporting designation no longer exist. *See Zevallos*, 793 F.3d at 110; 31 C.F.R. § 501.807.

To the extent Lopez Bello argues that the Constitution forbids simultaneous designation, several cases rejecting pre-deprivation notice foreclose his argument. "[D]ue process is flexible." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Post-deprivation process satisfies due process if the government must act quickly. *Gilbert v. Homar*, 520 U.S. 924, 930 (1997). When seizure is aimed at property that can be easily moved to another jurisdiction, destroyed or concealed, the government has a "special need for very prompt action." *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 678–79 (1974). In the Kingpin Act context, we have denied pre-deprivation notice because it would create a substantial risk of asset flight.

---

[8] The Kingpin Act defines "narcotics trafficking" as "any illicit activity to cultivate, produce, manufacture, distribute, sell, finance, or transport narcotic drugs, controlled substances, or listed chemicals, or otherwise endeavor or attempt to do so, or to assist, abet, conspire, or collude with others to do so." 21 U.S.C. § 1907(3).

*Zevallos*, 793 F.3d at 116. Indeed, pre-deprivation process "would likely cripple the Kingpin Act." *Id.* Barring simultaneous designation would have the same effect as requiring pre-deprivation notice: providing Traffickers an opportunity to drain assets. Because of the government's strong interest in stopping asset dissipation, simultaneous designation with an opportunity for post-deprivation process satisfies due process. *See Gilbert*, 520 U.S. at 930.

## C.   Due Process and Post-Deprivation Notice

Finally, we address Lopez Bello's argument that OFAC gave insufficient post-deprivation notice. Although OFAC provided the Blocking Memorandum, Federal Register notice, press release, redacted administrative record and unclassified summary, Lopez Bello alleges that he lacks a basis to understand his designation and offer rebuttal arguments. We disagree.

The Court weighs three factors under the familiar *Matthews v. Eldridge* balancing test to assess the constitutional adequacy of notice: (1) the private interest affected by official action; (2) the risk of error and probable value of additional safeguards; and (3) the government's interest. *Fares*, 901 F.3d at 323 (citing *Matthews v. Eldridge*, 424 U.S. 319, 355 (1976)). We apply this balancing in our consideration of the adequacy of notice following an OFAC designation. *See id.* (Kingpin Act designation); *Nat'l Council of Resistance of Iran v. Dep't of State* (*NCORI*), 251 F.3d 192, 206 (D.C. Cir. 2001) (AEDPA designation); *Al Haramain Islamic Found., Inc. v. Dep't of Treasury*, 686 F.3d 965, 979 (9th Cir. 2012) (IEEPA designation).

An OFAC designation has a "dire" effect on a designee's private interests. *Fares*, 901 F.3d at 323. Lopez Bello's designation froze all of his assets in the United States and many

of them are now subject to garnishment and execution. *See supra* Section I. OFAC's reliance on redacted evidence creates a risk of erroneous deprivation because the designee has only a limited opportunity to probe the evidence. *Fares*, 901 F.3d at 323–24. But the government—namely, the Executive Branch—has a critical interest in protecting classified, privileged and law enforcement information.[9] *See Holy Land Found.*, 333 F.3d at 164; *People's Mojahedin Org. of Iran v. Dep't of State* (*People's Mojahedin*), 327 F.3d 1238, 1242 (D.C. Cir. 2003). Indeed, requiring the government to disclose such information could "compel a breach in the security which [the Executive B]ranch is charged to protect." *NCORI*, 251 F.3d at 208–09.

Because of classified information's national security implications, we have found due process satisfied when the government discloses *only* the unclassified portion of the administrative record in AEDPA cases. *See NCORI*, 251 F.3d at 209; *People's Mojahedin*, 327 F.3d at 1242. In the Kingpin Act context, OFAC satisfied due process when it provided a Trafficker with the unclassified evidence on which the agency relied and gave him an opportunity to respond. *Zevallos*, 793 F.3d at 116–17. Other circuits have used "means of providing information to the potential designee that do not implicate national security." *Al Haramain*, 686 F.3d at 983. According to the Third and Ninth Circuits, the government may provide designees with a "short unclassified summary of classified evidence." *Id.*; s*ee Fares*, 901 F.3d at 324. Though "not highly

---

[9] The Kingpin Act separately defines "intelligence" and "law enforcement" information. 21 U.S.C. § 1903(e). OFAC described its redactions here as protecting privileged law enforcement information *and* classified information. J.A. 111. Lopez Bello does not distinguish between withholding "classified" and "law enforcement" information so we assume that the withheld information constitutes classified information. *See Fares*, 901 F.3d at 324–25.

fact-specific," such summaries can provide a designee "with the 'who,' 'what,' 'when' and 'where' of the allegations against him." *Kiareldeen v. Ashcroft*, 273 F.3d 542, 548 (3d Cir. 2001).

We conclude that OFAC gave sufficient notice via the redacted administrative record, unclassified summary, Blocking Memorandum, Federal Register notice and press release. As in *Zevallos*, OFAC provided the redacted administrative record on which it relied and an opportunity for Lopez Bello to be heard thereon. OFAC went further and provided an unclassified summary of the administrative record's privileged information. Although brief, the summary identifies Lopez Bello's laundering of drug proceeds, organizing of trans-continental cocaine shipments, handling of financial affairs, purchasing of Venezuelan news outlets and procuring of vehicles on behalf of El Aissami. Lopez Bello is not "forced to stumble towards a moving target." *Zevallos*, 793 F.3d at 118. Due process does not require more. *See id.* at 117.

\* \* \*

For the foregoing reasons, the judgment of the district court is affirmed.

*So ordered.*